Ladies and gentlemen, we welcome Judge Stacey Yandel of the Southern District of Illinois, who is visiting with us today. Welcome. Our first case for the morning is Berron against the Illinois Concealed Carry Licensing Review Board. Good morning, Your Honor. Joe Obenberger on behalf of the appellants. It is clear from Heller, McDonald, and Moore that the right to keep and bear arms is a fundamental right, along with the right to marry, to travel interstate, the right to vote. And the questions before this court importantly include the question of what does it mean to be a fundamental right alongside these. In our system of order and liberty, we know that no right is absolute. Every right is subject to some revision. The state in this case, I think, would like to consider simply all something to be balanced against the public interest. We don't think that's an appropriate analysis regarding a fundamental right. The Supreme Court has suggested, has said, that some kind of scrutiny above routine scrutiny with a presumption of regular... Counsel, I'm puzzled by the nature of this presentation. The problem in this case has to do with the procedures that are going to be used when it's perfectly clear that some procedures are appropriate. That's a pretty standard due process issue. Why should there be some special Second Amendment procedures? Why is it different from procedures under other amendments or under clauses of the Constitution that give rights to, say, contracts? We have pretty well-established procedures for dealing with claims about contracts. Well, of course, Your Honor. I suppose there's a sense in which a right to contract was a fundamental right, but since the 1930s... Constitution makes it so. It says so right there. Indeed, Your Honor. There was a line of cases before the Supreme Court until the 1930s, which overruled a whole bunch of employment protection laws precisely on that basis, that there was an absolute freedom to contract and the government couldn't put health, safety, and welfare regulations into place. But in the present age, we understand in our system of ordered liberty that there are rights that are not co-equal. Some rights are more important and more fundamentally protected because they go to the core of... That's right out of animal farm. All animals are equal, but some animals are more equal than others. We try to avoid that. That exactly was a point I intended to make. The right to keep and bear arms is a constitutional right to all ordinary law-abiding citizens, but under Illinois statute at bar presently, some citizens are more ordinary than others. So that's the key to me, presently, because part of what I have a problem with is how due process rights can be violated under the existing system when someone hasn't tried under the existing system. What's going on presently? Well, Your Appellants has, in fact, tried below and then rejected on evidence they weren't able to review. Then Illinois fessed up that it was in the wrong and it changed the rules. And now Ganttus will be getting his license, but go ahead. Your Honor, they changed it in a way that creates a standard of dangerousness light. The most critical thing going on before that board besides its composition is the fact you can't have a meaningful opportunity to respond to an objection that you haven't seen in its entirety. Yes, Illinois has changed that rule. We need to deal with the current setup. We're not writing on a sounded like what the Supreme Court held violated the First Amendment in the draft cases. Illinois was doing the very same thing that Selective Service Boards were doing. They've confessed they were in the wrong and have changed their procedures to procedures the Supreme Court has, at least as I read it, found adequate for religion-based claims. And religion is in the First Amendment. So that's the source of my question. We know what's needed for religion cases. Why are gun cases different? This is critical. This is really important. When a police officer, a law enforcement agency, files an objection, the objection consists of two things, a statement and the term used in 430 ILCS 6615 is information. The applicant never gets to see the information or the objection itself under the new regulations. The new regulations say only that the applicant is to be advised, if it's a sustainable claim, of the basis of the objection, not the evidence supporting it, not a witness statement, not a rap sheet, only the basis of the objection. Would you compare what Illinois is doing here with how the Selective Service System fixed its rules after the Supreme Court held that a system like Illinois' initial system violated the Constitution? Your Honor, I have to tell you, I'm not prepared on Selective Service. I did register for the draft. I swear I did in 1972. But my point is we've been through this before. The closest parallel to the before case was the draft, where draft boards were making decisions without revealing enough to the applicants. And there was a problem. It got fixed. The Supreme Court approved the fix. I'm trying to figure out why you think the Second Amendment would call for different procedures than the First Amendment. Well, I believe that the Fourteenth Amendment and Matthews, as well as the Second Amendment, require that before the right to keep and bear arms, a fundamental right can be taken away. You have to have a meaningful opportunity to respond. Yeah, that's why I'm asking. You don't doubt that the First Amendment is a fundamental right, that it is important that people's right of religion not be overridden, right? That's why I say we've been through this before. We need to think about what's going on in Illinois with respect to guns versus, say, what happened in the 60s and 70s with respect to religious rights and the draft. Your Honor, if a parade permit or another permit for a public demonstration can be denied on the basis of evidence you've never had an opportunity to see, only we'll tell you they think you're obnoxious or they think that you're likely to cause an affray, but no police reports to substantiate it, no evidence. That's what's going on. They didn't change that part of the record because they can't. It's in the statute. The board doesn't have authority to change the statute, and that's why it's still here. If you or anyone else, Your Honor, were to apply for a concealed carry permit and an objection came in, you'd be given 15 days to respond to a terse basis of the objection and you'd never get a chance to see whatever evidence was submitted. Except the full administrative record does become part of the record on review, so it's revealed then. There's some real problems. Judge, there's some real problems with that. The procedural due process is required at the time the decision is made. The fact that there's an administrative remedy afterwards is something that's available only when you're trying to correct something like a random and unauthorized act. Here the whole pattern is hardwired into the statute. There's another problem too. If you only get to see the evidence on administrative review, number one, under Illinois law you can't add any more evidence. You can't respond to the new stuff you're seeing for the first time. The standard of review back to the board is just going to be whether there's some substantial evidence, not were they right or wrong. At a time when it can make a difference, when you can actually argue, I am not a dangerous person, you have no opportunity, and it doesn't fix the problem that it's available to you after you've been denied and after the decision has been made. You can't park it down the road. The real problem here is the board isn't free to allow access, even if it intended to and even wanted to, because of the statutory provision that no one can inspect. I have to tell you this, but under the Supremacy Clause, the Constitution trumps the statutes of Illinois. The board is required to follow the Constitution. It cannot say, well, we've got this statute, we can't follow the Constitution. That's why we're here, judge. The board thinks that what it's doing is consistent with the Constitution, right? It's not saying we are compelled to violate the Constitution. No government is compelled to violate the Constitution. Judge, if that's what they think. That's what they are saying. We have no reason to believe they are dissembling. They tell us that they believe this is consistent with the Constitution. The state's attorneys certainly take that position. They can take no other. The hands of the board are bound by the statute. No, they are not. You are aware of the Supremacy Clause. Yes, sir. Federal law beats state law. Don't come to a court of appeals and say states are bound by state law, anything in federal law to the contrary, notwithstanding. It's preposterous. It weakens your argument. Your Honor, I don't believe an administrative agency has the power to pass on the constitutionality of the statute. The Supremacy Clause applies to all officials of state government. You don't need to make a statement. Mr. Siegel. Good morning, and may it please the court, counsel, I'm Assistant Attorney General Evan Siegel for the State Defendants, and with me at council table is Solicitor General Carolyn Shapiro. I'd like to begin by identifying the claims now before the court and road mapping what remains. Only two of the four consolidated appeals remains viable, and then only certain counts in those two surviving appeals, and that's because both Plaintiff Barron and Gantos' claims are eliminated on mootness grounds, and because of standing deficiencies and mootness, all that really remains before this court right now is a single element of the Plaintiff's Second Amendment claims. Everything else goes out on ripeness as well. Meanwhile, all four variants of the due process claims must be dismissed on standing grounds, and one of those also fails on mootness. I'm a little lost by this. A person has standing or not. You seem to think that you have standing or not for each legal theory, and I don't understand that. Yes, well, we cabined the due process claims separately from the Second Amendment claims because it appeared in their opening brief that they were arguing that they didn't have to be there. There is only one claim in all these cases. Different legal theories are not different claims. The plaintiffs have a single grievance, which is they didn't get concealed carry licenses, and they have multiple legal theories in support of their grievance. That's not different claims. That's a fundamental point of federal practice. Yes, and it may be that all their claims fail on ripeness grounds. There's only one claim. Yes. They have different legal theories. So, if I can, I'd like to tell the court a little bit about how this new process came into being and what it does now because they haven't applied under that process, and they misstate how it works and they conjecture how it works. The system that we now operate came into being in July of 2014. These new rules change the experience for the applicant and the way that the board and the First, we now inform an applicant when there has been a law enforcement agency objection to the application. That application goes up on a computerized system. There could be several hundred applications a day that are processed. They are seen across the state by local police, the sheriff's office, state's attorneys, whatever the jurisdiction that's in charge of law enforcement there, and the law enforcement there has the opportunity to lodge an objection. That objection must be conveyed to the applicant within 10 days. Secondly, accompanying the fact of that objection now is the basis for the objection. That is enshrined in the new regulations that we introduced in July 2014. So, give us an example, a practical example of that because counsel's big point is, yes, they get notice. They find out what the reason is, but they don't get anything behind the reason. No documents, no depositions, no... That's not the case in every instance. What it turns on is how that information comes in, and you have dozens or perhaps hundreds of different law enforcement agencies reporting information in different ways. What an applicant could receive is, for instance, the Skokie police objects on the basis of prior arrests for an applicant. There could be backup information about those arrests that we provide. Is that optional, the backup information? It is optional. It depends what comes in. It's not absolute, but there may be a narrative describing what the arrests were for, when they occurred, and within 15 days of receiving that information, the applicant has the opportunity to provide explanation, to contextualize. Counsel, I'm still a little concerned in trying to understand exactly what you're saying. You said they may be provided with certain information. You understand the challenges, and the question is whether they're given a sufficient basis to have a meaningful opportunity to address the denial. You say they may be provided. Am I hearing you say that it depends on what the department decides to provide? No, it depends on what the local law enforcement objecting agency in Sangamon County or in Lake County is able to provide, given the records. Able or willing? Able, I believe. With all of these different law enforcement agencies objecting, there is no consistency, if you will, at this point, with the type of information that comes in. But, if you are arrested in 1985, or if you have a series of arrests... Well, see, arrest is pretty easy, because then you can go back and get your rap sheet, you can find out. But what if it's something else other than an arrest, like an ongoing investigation of someone? Yes, correct, Your Honor. This information may not be... A fair bunch of this information may not be provided to the applicant. If it contains sensitive information, such as confidential witnesses, or crimes of a sexual nature under investigation... Is the applicant informed that, okay, there is information that exists, but, for instance, it needed to be redacted, or it's not being produced for this purpose, or do they not even know that it exists? The notification may say that there's an ongoing investigation. It may not... It may? Yes. Or may not? It is permissive. But the individual is in the best position to tell the board, what happened? Why were you arrested in 1985? Or, why do you have these three arrests? If somebody can't recall why they have an arrest sheet, maybe they... Well, like I said, I'm beyond the arrest is pretty, to me, easy to respond to, because you know when the arrest was, you can go back, you can get the rap sheet. I'm talking about other categories of things where they might be rejected. And what counsel's point is, is that when it gets then to the review, let's say somebody gets a denial, when it gets to the review, they get the full administrative record. Maybe there were allegations made, but they want to respond to that, but they're not in a position to do so because they can't... They can't add more to the record. They can't supplement the record. Is that true? They can't supplement the record when it gets to that level of review? They're stuck with whatever? It's not true because they have the opportunity to provide what information they are able. And also, alternatively, the board itself can ask the applicant to provide additional information, to provide further context. And can the applicant also ask the law... to provide more information at that level? Or permit it? Well, there's a time frame. I understand that. Assuming somebody's within the time frame. Yes, you can conceivably FOIA information or go through the state police's systems for obtaining... And how long does FOIA take? A long time. Way beyond the time period. Yes, but if you're contemplating applying for a concealed carry permit because you already have a FOIA card, you can get your ducks in a row months in advance, if circumstances allow, and find out what information the state police has about you from different law enforcement agencies, which could include the FBI or Homeland Security. And part of that confidential information that you noted, Judge Williams, that can't be presented to an applicant necessarily may be that somebody is on a terrorist watch list. So third, I mentioned that the board... the board's discretion can provide for a hearing. It can ask the applicant to come in and there will be testimony from a witness, and the board will consider that with the documents that it looks at in making a determination. Now, there's also, as you alluded to earlier, Judge Williams, there is the post-deprivation process of administrative review, where an applicant can file a complaint and the entire record is filed under seal in the state circuit court, redacted if necessary, and at that point the applicant sees every document within our ability to reveal it, if it's not confidential, to make his case to the circuit court why he should or should not receive a license. And that is what happened with Plaintiff Gantos. He was able to go to Lake County Circuit Court and he obtained a reversal. The circuit court reversed the board's determination. Now, we've been operating under these rules for nearly two years and they're unimproved. So then, at that level, the full administrative record, including statements that might be there, are given to the applicant? If those statements do not compromise. If it's not a security issue. Yes. Okay. And this court has held that this type of administrative due process under the state administrative review law satisfies the due process clause. These systems are an improvement to our prior process. We continue to develop new and better measures to ensure that the Second Amendment right to self-defense is provided to people who satisfy the requirements of being able to carry in public. There were enormous startup costs, which we briefed this court about in the Shepard case. And at the start, we had many, many applications each month with the backlog that we worked through. And incidentally, the remaining plaintiffs, Mr. DiCervi and Mr. Moustakis, each applied in January of 2014 for their concealed carry permits and they were denied within eight a permit. And not everyone is even flagged for a law enforcement objection. And the board can and does regularly overrule law enforcement objections or deem that they're not sustainable. So these two aside, in a little over two years, we have issued a little bit more than 170,000 valid concealed carry licenses. That's about 2% of every person in Illinois over the age of 21. And we still are receiving thousands of applications a month. It can range from 5,000 to 11,000. And that number has been on the increase in the last several months. So our system is designed to ensure that our citizens, whether they choose to carry a license in public or do not, that only people who are qualified, who are not deemed dangerous or a threat to public safety, obtain licenses. If there are no questions about this process, I can turn to standing or mootness or the Second Amendment, or we can stand on our briefs. Are there questions about that? Well, the fees, the $150 registration fee they each paid, they never got that back, right? That's correct, Your Honor. And we would identify that of the three claims that they mentioned on page 15 of their reply brief, now that they've narrowed them down. That's the only one that survives standing. And they hinge their entire argument on supposed distinctions from the Second Circuit's decision in Quank. And in that case, the Second Circuit held that New York City's any constitutional provision. Now, ours is $150 for five years, so it's about $30 a year. In Quank, it's five times the amount. So there's certainly no monetary basis for claiming that there's a constitutional violation. And they make an alternative argument that the fee here goes to all different places that don't have to do with law enforcement functions. Well, that's not true. They are all law enforcement related, and they neglect to tell us that 80% alone goes to an Illinois State Police fund. By comparison, I would have the court note that Texas and Arkansas charge licensees around $150. There's no due process case on that that I'm aware of. But we are in no sense an outlier. That fee does not severely burden their Second Amendment rights. And finally, neither one of the remaining plaintiffs has alleged that they couldn't pay that fee. They did pay that fee. They merely allege it's hardly nominal and call it an impermissible tax. And on the merits, that doesn't survive dismissal under Twombly or Iqbal. It's maintenance of a public order by limiting the carry right to those who are eligible. The court has no further questions. We would ask that you affirm the district court's decisions. Our process provides reasonable regulations to ensure the public safety under Heller, Moore, and Shepard. Thank you. Thank you, Mr. Siegel. Mr. Lee. May it please the court. Your Honor, as I address just three points on rebuttal, the one that occupied most of this court's attention, well, first of all, Mr. Barron's case is still pending. It is still pending in the state court. And it's especially illustrative of one of the claims that's being presented here. We have included in a supplemental appendix in our main brief a copy of the decision that Mr. Barron got when the state court remanded his application to the Illinois Concealed Carry Licensing Review Board. It essentially is two pages, each of which have one sentence which recites the very general statutory standard and does nothing more to connect his case to the record. That is illustrative of the third claim we advance under our due process argument. It is especially telling, we think, of how difficult it's going to be to obtain judicial review. Mr. Barron's case remains very much alive. And we submit he clearly has standing. As to the broader standing issues, the simple fact is, yes, the state recognized the problem after these lawsuits were filed. Yes, it tried to fix that problem. No, it did not completely fix that problem. It partially fixed the problem of no notice or opportunity to be heard, which is why we're no longer arguing about that. What it didn't fix was the problem that something will count, something is in the administrative record at the time that the board notifies an applicant that they're not telling the applicant and they don't want to tell the applicant until it's too late for the applicant to make a record. I have the same question for you as I had for Mr. Obenberger, that what the Supreme Court held in the draft sequence, particularly in Simmons against the FBI, was entitled to a fair resume of the FBI's objection, but not to the raw file. And some of what you're arguing seems to just assume that Simmons came out the other way. Well, no, Your Honor, because now we have Matthews versus Etheridge. And what Matthews versus Etheridge says is... We have been told by the Supreme Court that we have to carry out their decisions. We don't treat one as overruling another. There's no decision overruling Simmons. But Simmons is on a different matter. Now what we have under Matthews is a three-part analysis to assess whether... What we're talking about here is whether the authorized delay, not withholding information, but delaying information until after the administrative record closes, whether that passes the Matthews test. The state argues no reason for not disclosing record information that is before the board at the time they notify the applicant. They've given no reason why that information isn't disclosed, why that record, administrative record, isn't disclosed at the time. And Judge Williams made an observation about arrests where at least you can go back and get the record. It did come out during the argument that to do a FOIA request for that will take five days at least, that five days can be extended for another five. These are working days we're talking about. And yet the applicant has a total of 15 days total, not just working days, to respond. The FOIA option for going back and getting information that the board has and could easily give to the applicant just is not an option that passes muster under the basic Williams test. And again, if there are situations where there's sensitive information that isn't even to be shown to the judge on review, that's one thing. The board can write a narrow rule saying under what circumstances, national security information, ongoing investigation, we have those sorts of exceptions in fact in the FOIA statutes. The board could write a rule providing for those special circumstances. What the board is saying now, what they're telling us is their authorized system is they decide what kind of characterization counts as the basis for the objection and they withhold evidence in the administrative record currently before the board and they expect to hear from the applicant before that happens. For what purpose they never say, because as this court, as this bench has recognized, as soon as the administrative review procedure is filed, which costs another several hundred dollars, there will be an answer filed that will consist of the administrative record. So what needs to be justified under the Matthews test is not withholding evidence in some special cases where there may be a national security. The case will be taken under advisory.